HENRY F. HOYER, Appellant, v. JOHN KING.

**Reformation:** EVIDENCE. Plaintiff and defendant made a joint purchase of one hundred and forty acres, being the southwest one-fourth of a section, less the north one-half of the north one-fourth, and then divided it, receiving separate deeds from the vendor,—defendant, a deed for the south one-half of the one-fourth section; plaintiff, a deed for the remainder. The western and southern boundaries were highways. Close to the eastern boundary were a house and a barn,—the house, on plaintiff's land; the barn on that of the defendant; the barnyard extending to the dividing line between their land, and to the eastern boundary. On defendant's land, extending along the eastern boundary, from the highway on the south to the barnyard, was a lane, which the vendor had used, with gates at the ends, as his exit to the highway on the south. *Held,* that reformation of the deed to the defendant so as to reserve to plaintiff the right to use the lane, was properly denied, there being no such right unless there was an agreement therefor; it being conceded that before the division, the parties had a conversation as to such use, and the testimony of the parties and the witnesses being contradictory as to whether the right was conceded; and it appearing that plaintiff's tenant, for three years after execution of the deeds, used the land under express license from the defendant, on condition that the gates be kept closed (defendant at the time using it as an inclosure), and the testimony of the tenant being that when he broke the bridge in the lane, and spoke to the plaintiff about it, he said he had nothing to do with the bridge.

*Appeal from Lee District Court.*—HON. JAMES D. SMYTH, Judge.

WEDNESDAY, APRIL 7, 1897.

THIS is an action to reform a deed of conveyance of real estate so as to preserve to plaintiff an easement or right of use to a road across defendant's land from a public highway to the land of plaintiff. The following plat will indicate the situation:

JOHN KING' HOME PLACE.

Prior to February, 1887, George Byerle was the owner of the land, marked on the plat "Hoyer 60 Acres," and the piece marked "John King 80 Acres," making one hundred and forty acres. Plaintiff's father then owned the land north of the lane indicated by the dotted line. Defendant then owned land south of the public highway, marked "John King's Home

Place." On the twenty-fourth of January, 1887, George Beyerle; by his agent, Isaac Clark, entered into an agreement with the parties to this suit to sell to them his farm, consisting of the one hundred and forty acres, which contract was in writing, signed by the parties. The agreement contains no provisions as to how the land was to be divided between the purchasers, but that matter was definitely understood, and the division was made as indicated by the plat; the plaintiff to have the north sixty acres, connected with the land owned by his father, and the defendant to have the south eighty acres, separated from his home farm by the public highway. It will be seen that this division gave to plaintiff the Beyerle house, and to the defendant the barn. The consideration for the Beyerle farm was four thousand two hundred dollars. Beyerle, in February after, made separate deeds to the parties, on the basis of their division; the consideration for the sixty acres being one thousand eight hundred dollars, and that for the eighty acres being two thousand four hundred dollars. The strip of land between the figures 2 and 3 on the plat is about twenty-one feet in width, fourteen feet of which is a part of the land conveyed to defendant, and is the strip in controversy. This fourteen feet, with seven feet from the adjoining land on the east, had for many years, by an agreement between Beyerle and the trustees of the Labor Institute, owning the land indicated "School Farm" on the plat, constituted a road or lane for their convenience. This lane was Beyerle's means of access to the public highway. In the deed to King no reservation is made of the lane, and the plaintiff brings this suit to so reform the deed as to make the reservation in his favor, as a part of the agreement between the parties in making their purchase and division of the Beyerle farm. The district

court denied the relief, and the plaintiff appealed.
—*Affirmed.*

Casey & Stewart for appellant.

James C. Davis for appellee.

GRANGER, J.—The basis of the reformation of the
deed, as claimed, is a parol agreement between the
parties, made during the negotiations for the Beyerle
farm. If there was not such an understanding, there
can be no reformation. That there was talk on the
subject of the easement being reserved to the plaintiff,
both parties agree, but they are in dispute as to the
result; the plaintiff saying that he asked for the ease-
ment, and that defendant agreed to it, while defend-
ant says plaintiff asked for it, and he, in terms,
refused it. In view of this situation, some undisputed
facts bearing on the probabilities of the case may be
important. The lane or road was never a public high-
way during Beyerle's ownership of the land, in the
sense that Beyerle could not any time close it against all
persons except White's Manual Labor Institute, which
institute gave a part of the land under an agreement
for a strip of land north of the lane, from Beyerle,
and it is probably true that there was to be a joint
use of the lane. The agreement was made in 1857,
in writing, but it is not in the record, and the
inference is that it is lost. Beyerle built a bridge
on the road, some three feet of which was on
the land belonging to the institute, and the
lane was fenced, first by board fences, and, later,
by hedges. The road seems to have been used by the
institute, or the occupants of its land, but little,
and that years ago. Beyerle used the lane about
twenty-eight years, until he moved to Nebraska,
which was some eight years before his testimony was

taken. The lane was his only access to the public highway on the south from his house, and was, no doubt, intended to be permanent for that purpose. The evidence tends to show that an object of the institute in giving the land for a part of the lane was that its management thought some of placing a house on that part of the farm, which was never done. The institute is not a party to this suit, and, because of the lane having been closed, we infer that it makes no claim to the lane. We do not understand plaintiff to even claim any right to use that part of the lane owned by the institute. It is simply a claim for the fourteen feet from the land of defendant. During the period of Beyerle's use of the lane, it was closed by gates at the ends, the lane passing through his barnyard. With these facts understood, we think the case is to be considered as if the lane had consisted of simply the fourteen feet on the land of Beyerle, uninfluenced by the facts as to the institute.

It remains for us to consider the evidence as to what was said between the parties pending the negotiations for the land. We can do little more than note our conclusions. Seven witnesses testify as to the conversations: Plaintiff, his father, mother, and Mr. Clark, testify as to the agreement for the easement. Defendant and his two sons testify that plaintiff's proposition in that respect was refused, and that plaintiff assented to the negotiations with that understanding. The corroborating facts, after the sale, are stronger in favor of the defendant. The testimony of the tenant of plaintiff, who occupied a part of his land for three years after plaintiff got his deed, shows, though contradicted by plaintiff, that plaintiff did not claim a right to the land; that he (the tenant) broke the bridge in the lane, and, when he called plaintiff's attention to it, he said he had nothing to do with the

bridge,—that King would fix it. Plaintiff says the agreement as to the lane was that each was to do his share in keeping it up. "Each one was to do his share in keeping the bridge up." There is dispute about many of those statements, and we only state what the evidence tends to show. The burden is on the plaintiff to establish the agreement by that clear preponderance that will justify a court of equity in changing a written contract of the parties. Independent of the alleged oral agreement, plaintiff's claim would hardly be entitled to consideration. His land now abuts on a public highway,—not, however, as convenient as the highway south of him. Since the deed passed to defendant, he (defendant) has done nothing inconsistent with his present claim. His claim is in accord with all the writings made between the parties in the sale and conveyance of the land. Plaintiff had full knowledge when the deed was made, that it did not contain the reservation, and, after the acts of defendant, it is strange that he should have rested as he did, if he claimed a right to the lane. It appears that plaintiff's tenant, for the three years he occupied the land, used the lane under express license from defendant, and on condition that the gates should be kept closed, and that defendant used it as an inclosure for stock. We do not think the district court erred in its judgment, and it is AFFIRMED.